1

2

3

4                        UNITED STATES DISTRICT COURT

5                        EASTERN DISTRICT OF CALIFORNIA

6

7    MORRIS ROBERSON,                          No.  1:22-cv-00833-JLT-SAB (PC)

8                    Plaintiff,                FINDINGS AND RECOMMENDATIONS
                                               REGARDING DEFENDANTS'
9         v.                                   EXHAUSTION MOTION FOR SUMMARY
                                               JUDGMENT
10   CDCR, et al.,
                                               (ECF No. 29)
11                   Defendants.

12

13        Plaintiff Morris Roberson is proceeding pro se and in forma pauperis in this civil rights

14   action filed pursuant to 42 U.S.C. § 1983.

15        Currently before the Court is Defendants' motion for summary judgment for failure to

16   exhaust the administrative remedies, filed July 3, 2023.

17                                    **I.**

18                            **RELEVANT BACKGROUND**

19        This action is proceeding on Plaintiff's excessive force claim against Defendants Chavez,

20   Salazer, Kyt, Lirio and Furlong, and failure to intervene claim against Defendants Valero,

21   Rodriguez, Charles, Furlong, Acebedo, Lirio, Hunter Loza, and Gonzalez.  (ECF No. 12.)

22        Defendants filed an answer to the complaint on February 17, 2023.  (ECF No. 23.)

23        As stated above, on July 3, 2023, Defendants Gonzalez, Charles, Loza, Hunter, Rodriguez

24   and Acebedo filed a motion for summary judgment for failure to exhaust the administrative

25   remedies.  (ECF No. 29.)  Plaintiff did not file an opposition and the time to do so has passed.

26   Accordingly, Defendants' motion for summary judgment is deemed submitted, without oral

27   argument.  Local Rule 230(l).

28   ///

                                         1

## II.

## LEGAL STANDARD

### A.    Statutory Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) of 1995, requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions." 42 U.S.C. § 1997e(a); see also Ross v. Blake, 578 U.S. 632, 638 (2016) ("An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.").  Exhaustion is mandatory unless unavailable.  "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'  Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance."  Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

This statutory exhaustion requirement applies to all inmate suits about prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002) (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by the process, Booth v. Churner, 532 U.S. at 741, and unexhausted claims may not be brought to court, Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion.  Jones, 549 U.S. at 216; Albino v. Baca,  747 F.3d 1162, 1166 (9th Cir. 2014).  "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)."  Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust.  Id.

### B.    Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's

2

position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, although it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172.  If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  Id.  "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."  Id. at 1166.  However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts."  Id.

In arriving at this Findings and Recommendation, the court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

### III.

### DISCUSSION

**A.**  **Description of CDCR's Administrative Remedy Process**

1.  Exhaustion Process Prior to June 2020

3

Prior to June 2020, CDCR permitted its prisoners the right to administratively appeal any departmental decision, action, policy, omission, or condition that has an adverse material effect on the inmate's welfare. (UF 2.) When filing appeals, inmates had to follow the procedures set forth in Title 15, sections 3084.1 through 3085 of the California Code of Regulations.1 (DUF 3, 5.) An inmate appeal was typically initiated by submitting a CDCR Form 602, Inmate/Parolee Appeal (Form 602 or Appeal). (UF 4.) Under Title 15, a prisoner procedurally exhausted his appeal by receiving a decision at the third and final level of formal review. (UF 11.) Inmates had to describe the problem and action requested in the appeal form. (UF 7.) Inmates were required to list the staff members and the date of that staff member's involvement in the issue under appeal. (UF 7.) If the inmate did not have the requested identifying information about the staff member(s), he had to provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question. (Id.) The inmate had to state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal forms. (Id.)

When an inmate submitted an appeal that did not comply with regulations governing the appeal process, an appeals coordinator would reject and return the appeal with the reason for the rejection and provide instructions to correct the defect, if correction is possible. (DUF 8.) An appeal that was cancelled could not be resubmitted, but an inmate could appeal the cancellation if he/she felt the cancellation was in error. (Id.) An appeal could be rejected or cancelled for the reasons outlined in California Code of Regulations Title 15, sections 3084.6 (b) and (c). (Id.) If an appeal was rejected or cancelled, it was not exhausted. (Id.) Rejection or cancellation of an appeal at any level did not exhaust administrative remedies. (UF 10.)

A referral to the Office of Internal Affairs or a request for modification by a higher level of review did not exhaust an inmate's appeal. (DUF 11.) The inmate still had to appeal the decision through all three levels of review and receive a decision at the third and final level in order to exhaust an appeal. (Id.)

The Office of Appeals (OOA) receives, reviews, and maintains all non-medical inmate grievances at the final level of review. (UF 16.) A final decision by the OOA generally exhausts

1   an inmate grievance. (Id.)

2         2.      Exhaustion Process After June 2020

3         As of June 1, 2020, a prisoner is required to follow the procedures set forth in California

4   Code of Regulations, title 15, sections 3480-3487. Cal. Code Regs. tit. 15, §§ 3480-3487 (eff.

5   June 1, 2020). (UF 3.) Subsequent to June 2020, inmates may now submit a written grievance

6   containing one or more claims, subject to the requirements in section Cal. Code Regs., tit. 15,

7   section 3482, to dispute a policy, decision, action, condition, or omission by CDCR or CDCR

8   staff that causes some measurable harm to the inmate's "health, safety, or welfare." (UF 12.) The

9   grievance process now has two levels of review. (Id.) The new process requires the inmate to

10   submit a grievance in writing to the Institutional Office of Grievances (OOG) at the prison, re-

11   entry facility, or fire camp were they are housed within 30-days. (Id.) The inmate shall submit the

12   grievance on a form 602-1, if available, or by other means provided by the institution. (Id.) If the

13   inmate wishes to appeal the Institutional OOG decision, they may do so in writing to the OOA

14   within 30-days. (Id.)

15         Subsequent to June 2020, the inmate must still describe all information known and

16   available regarding the claim, including key dates and times, names and titles of all involved staff

17   (or descriptions of those staff members), and names and titles of all witnesses to the best of the

18   claimant's knowledge. (UF 13.) Inmates must also include any and all supporting documents

19   available. (Id.) Claims may be rejected for any of the reasons provided in Cal. Code Regs., tit. 15,

20   § 3487, including failure to submit the claim within the applicable time frames, concerns an

21   anticipated decision, duplicative, claim concerns harm to someone other than the claimant, and

22   the claim concerns the regulatory framework of the grievance or appeal process itself. (Id.)

23   Completion of the review process by the Office of Appeals constitutes exhaustion of all

24   administrative remedies available to a claimant. (Id.) A claim is not exhausted if it was disallowed

25   pursuant to subsections 3482(d)(3) or 3485(d)(3) or rejected pursuant to subsection 3487(a). (Id.)

26         3.      Exhaustion Process After January 2022

27         Subsequent to January 2022, emergency regulations took effect further revising the inmate

28   grievance process. (UF 14.) These regulations are still contained in Cal. Code Regs. tit 15

§§3480-3487. (Id.) These revisions are not relevant to this action, as the relevant appeals and grievances were submitted and addressed prior to January 2022. (Id.)

**B.      Summary of Plaintiff's Allegations**

On August 16, 2019, Plaintiff was a prisoner at Kern Valley State Prison (KVSP).  At approximately 8:00 a.m., Plaintiff was being moved from the administrative segregation unit to Facility C Building Five (FCB5).  When Plaintiff arrived and entered the building, he was approached by floor officers Chavez and Salazer.  When Plaintiff arrived to the C-section cell 229, the lower bunk was occupied by another inmate.  Plaintiff informed the inmate that he had a lower bunk chrono, but the inmate replied, "I don't care, I was in the cell first."  Plaintiff then informed officers Chavez and Salazer that he had a medically assigned lower bunk chrono, and Chavez stated, "I don't care what you have, you're going into that cell, and I don't care if you got to sleep on the floor."  Plaintiff stated, "I don't want any problems or confrontation" and requested to see a sergeant.  As Plaintiff sat at the day room table, not resisting, Defendants Chavez started spraying Plaintiff in the face with pepper spray until the canister was empty.  Defendant Chavez then picked the Plaintiff up from the table and slammed him to the concrete floor face first.  Chavez then put his foot on Plaintiff's back so he could not move or breath and told Defendant Salazer to pepper spray Plaintiff.  Salazer began spraying Plaintiff in the mouth, nose and eyes, and he yelled out, "I can't breathe."  Chavez removed his foot from Plaintiff's back and pressed his foot on Plaintiff's neck to hold his head still so Salazer could continue to spray him.  Plaintiff pleaded with Chavez to take his foot off Plaintiff's neck after what seemed like several minutes.  Chavez then handcuffed Plaintiff behind his back and activated his personal alarm device.

Defendant Valero was the Facility C Building five control officer who failed to activate his personal alarm device and interference during the incident.  In response to Chavez's alarm, several officers responded to the Building Five area.  Defendants Chavez and Salazer left Plaintiff to "huddle up" in the rotunda in what appeared to be a private meeting to coordinate the attack on Plaintiff.  The officers re-entered the C-section area and Defendants Kyt and Lirio picked Plaintiff up from the concrete floor and proceeded to escort him to out of Building Five.  As soon as they

6

were out of the view of other inmates, Defendant Kyt yelled out, "he spit on me," and both Kyt and Lirio started to punch Plaintiff in the head, face and torso area.  Defendant Lirio lifted Plaintiff off the ground and slammed him to the ground while he was still in handcuffs. Defendant Kyt and Lirio began kicking Plaintiff all over his body, while Defendants Rodriguez, Charles and Furlong failed to intervene.  Defendant Charles eventually said, "ok that's enough put this mask over his head and escort him to the patio."

Plaintiff was escorted to the program office by several officers and when he entered the office, Defendant Furlong began to punch Plaintiff in the back of his head and slammed him into the wall.  Captain Acebedo, Rodriguez, Charles, Lirio, Hunter, Loza and Gonzalez did nothing to stop the assault.  While Plaintiff was in the holding cage, Defendants Hunter and Gonzalez only took one photo of Plaintiff while facing the back of the holding cell.  Plaintiff later found out that Hunter and Gonzalez said Plaintiff refused to take photographs.

On information and belief, Defendants Chavez, Salazer, Valero, Kyt, Charles, Loza, Rodriguez, Furlong, Hunter, Gonzalez, Cruz and Acebedo either did not report or falsely reported the incident and injuries resulting from their conduct.  Plaintiff was charged with battery on prison staff and was placed in administrative segregation and lost good time credits.

The incident was also referred to the Kern County District Attorney's office and after a jury trial he was found not guilty of battery.  Plaintiff was retaliated against due to the prior excessive force claim that took place on March 5, 2019, five months earlier.  Plaintiff was not provided a medical evaluation following the incident.  The inmate grievance procedure is illusory, and only one of his inmate appeals was processed and all attempts were thwarted.

C.     **Statement of Undisputed Facts**[1]

1.     Plaintiff Morris Roberson (CDCR No. C83614) is an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR).  (Compl. at 1; Declaration of A. Leyva (Leyva Decl.) ¶ 3, Declaration of H. Moseley (Moseley Decl.) ¶ 7.)

2.     CDCR and KVSP had an administrative grievance process for inmates at all times relevant to this lawsuit, which allows them to appeal any departmental decision, action, policy,

---

[1] Hereinafter referred to as "UF."

omission, or condition that has an adverse material effect on the inmate's welfare.  (Leyva Decl. ¶ 3; Compl. at 5, 7, 9, 11, 13, 14, 16, 18; Moseley Decl. ¶¶ 2-5.)

3.    Before June 1, 2020, a CDCR prisoner was required to follow the procedures set forth in California Code of Regulations, title 15, sections 3084-3085. Cal. Code Regs. tit. 15, §§ 3084-3085 (repealed eff. June 1, 2020). As of June 1, 2020, a prisoner is required to follow the procedures set forth in California Code of Regulations, title 15, sections 3480-3487. Cal. Code Regs. tit. 15, §§ 3480-3487 (eff. June 1, 2020).  Leyva Decl. ¶3; Moseley Decl. ¶6; Cal. Code Regs. tit. 15, §§ 3084-3085 (repealed eff. June 1, 2020), 3480-3487 (eff. June 1, 2020).

4.    Prior to June 1, 2020, an inmate appeal was initiated by submitting a CDCR Form 602 (Form 602 or appeal).  (Leyva Decl. ¶ 5; Cal. Code Regs. tit. 15, § 3084.2(a).[2]

5.    Prior to June 1, 2020, inmates had to follow the procedures set forth in California Code of Regulations, Title 15, sections 3084.1 through 3085, which included describing the problem and action requested in the appeal form. The appeals process had three levels of review.  (Leyva Decl. ¶ 5; Moseley Decl. ¶ 6.)

6.    Prior to June 1, 2020, at the first level of review, CDCR form 602 appeals were submitted to the appeals coordinator at the institution. The appeals coordinator could bypass the first level under certain circumstances. If the inmate was not satisfied with the decision at the first level, he could appeal to the second level.  The second level had to be completed before the inmate could appeal to the third level. The third level of review constituted the decision of the Secretary of the California Department of Corrections and Rehabilitation and was conducted under the supervision of the third level Appeals Chief or equivalent. A decision at the third level review exhausted administrative remedies. To properly exhaust an administrative grievance, an inmate had to pursue his appeals through all levels of the administrative appeal process unless excused from one of the levels under Title 15.  (Leyva Decl. ¶6; Cal. Code Regs. tit. 15, §§ 3084.1, 3084.7; Moseley. Decl. ¶¶ 2, 4, 5.)

---

[2] All Title 15 references refer to the operative versions in effect from 2019-2022.  This includes a modification to the appeals process which occurred in June 2020, and to the extent they are applicable, the emergency regulations which took effect in January 2022.

7.      Prior to June 1, 2020, inmates were required to list the staff members and the date of that staff member's involvement in the issue under appeal. If the inmate did not have the requested identifying information about the staff member(s), he had to provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question. The inmate needed to state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal forms.  (Leyva Decl. ¶ 7; Cal. Code Regs. tit. 15, §§ 3084.2(a)(3), 3084.2(a)(4).)

8.      Prior to June 1, 2020, when an inmate submitted an appeal that did not comply with regulations governing the appeal process, a grievance coordinator would reject and return the grievance with the reason for the rejection and provide instructions to correct the defect, if correction was possible. A cancelled appeal could not be resubmitted, but an inmate could appeal the cancellation if he/she felt the cancellation was is in error. An appeal may be rejected or cancelled for the reasons outlined in California Code of Regulations, Title 15, sections 3084.6 (b) and (c), including expiration of time limits, allegations that lack factual evidence and specific detail, and exceeding the allowable number of appeals filed in a 14 calendar day period. If an appeal was rejected or cancelled at any level, it was not exhausted.  (Leyva Decl. ¶ 8; Cal. Code Regs. tit. 15, §§ 3084.6(b), (c), and (e); Moseley Decl. ¶ 4.)

9.      Prior to June 1, 2020, inmates were only permitted to appeal one issue per appeal. (Leyva Decl. ¶ 8; Cal. Code Regs. tit. 15, § 3084.6(b)(8).)

10.      Prior to June 1, 2020, rejection or cancellation of an appeal at any level did not exhaust administrative remedies.  (Leyva Decl. ¶ 9.)

11.      Prior to June 1, 2020, a referral to the Office of Internal Affairs or a request for modification by a higher level of review did not exhaust an inmate's appeal. The inmate still had to appeal the decision through all three levels of review and receive a decision at the third and final level in order to exhaust an appeal.  (Leyva Decl. ¶ 10; Cal. Code Regs. tit. 15, §§ 3084.1, 3084.7(i)(2).)

12.      Subsequent to June 1, 2020, inmates may now submit a written grievance containing one or more claims, subject to the requirements in section Cal. Code Regs., tit. 15,

section 3482, to dispute a policy, decision, action, condition, or omission by CDCR or CDCR staff that causes some measureable harm to the inmate's "health, safety, or welfare." The grievance process now has two levels of review. The new process requires the inmate to submit a grievance in writing to the Institutional Office of Grievances (OOG) at the prison, re-entry facility, or fire camp were they are housed within 30-days. The inmate shall submit the grievance on a form 602-1, if available, or by other means provided by the institution. If the inmate wishes to appeal the Institutional OOG decision, they may do so in writing to the Office of Appeals (OOA) within 30-days.  (Leyva Decl. ¶ 11; Cal. Code Regs. tit. 15, §§ 3481(a), 2482, 3482(a)(1) and (b), 3482(a)(2) and (c), 3485(a)-(b).)

13.     Subsequent to June 1, 2020, the inmate must still describe all information known and available regarding the claim, including key dates and times, names and titles of all involved staff (or descriptions of those staff members), and names and titles of all witnesses to the best of the claimant's knowledge. Inmates must also include any and all supporting documents available. Claims may be rejected for any of the reasons provided in Cal. Code Regs., tit. 15, § 3487, including failure to submit the claim within the applicable time frames, concerns an anticipated decision, duplicative, claim concerns harm to someone other than the claimant, and the claim concerns the regulatory framework of the grievance or appeal process itself. Completion of the review process by the Office of Appeals constitutes exhaustion of all administrative remedies available to a claimant. A claim is not exhausted if it was disallowed pursuant to subsections 3482(d)(3) or 3485(d)(3) or rejected pursuant to subsection 3487(a).  (Leyva Decl. ¶ 12, Cal. Code Regs. tit. 15, §§ 3482(c)(2), 3482(c)(4), 3487, 3486(m), 3482(d)(3), 3485(d)(3), 3487(a).)

14.     Subsequent to January 2022, emergency regulations took effect further revising the inmate grievance process. These regulations are still contained in Cal. Code Regs. tit 15 §§3480-3487. These revisions are not relevant to this action, as the relevant appeals and grievances were submitted and addressed prior to January 2022.  (Leyva Decl. ¶ 13; Cal. Code Regs. tit. 15, §§ 3480-3487.)

15.     If Plaintiff submitted a grievance to another institution regarding an event that occurred at KVSP, the institution would have forwarded the grievance to KVSP for review and

the grievance would be reflected on the KVSP Inmate/Parolee Appeals Tracking System – Level I and II (IATS) printouts. All inmate grievances and appeals after June 2020 are tracked on the inmate's Grievance and Appeal History Reports.  (Leyva Decl. ¶ 16, Ex. A ¶ 14, Ex. B ¶ 16; Moseley Decl. ¶ 6, Exs. A-B.)

16.    The Office of Appeals (OOA) receives, reviews, and maintains all non-medical inmate grievances at the final level of review. A final decision by the OOA generally exhausts an inmate grievance.  (Moseley Decl. ¶¶ 2, 5.)

17.    Plaintiff submitted multiple grievances to KVSP's OOG and the OOA between August 16, 2019, when Plaintiff's allegations first giving rise to his lawsuit occurred, through July 7, 2022, when Plaintiff filed his complaint.  (Leyva Decl. ¶ 14, Exs. A-B; Moseley Decl. ¶ 7, Exs. A-B.)

18.    Plaintiff submitted one appeal during the relevant time frame that is relevant to the allegations in his Complaint and three which are related.  (Leyva Decl. ¶¶ 17-20, Exs. C-E; Moseley Decl. ¶¶ 8-11, Exs. C-E.)

19.    KVSP-O-19-03384 is the grievance relevant to Plaintiff's claims.  (Leyva Decl. ¶ 19, Ex. C; Moseley Decl. ¶ 9, Ex. C.)

20.    In Grievance Log Number KVSP-O-19-03384, Plaintiff alleged he was attacked on August 16, 2019. Specifically, while attempting to sit down in the dayroom Officers Chavez and Salazar inappropriately sprayed him with pepper spray. During the subsequent escort, Officer Kyt punched and kicked him and Officer Lirio slammed him to the ground. While he was in the program office, Officer Furlong punched him in the head and threw him into the wall rendering him unconscious. Plaintiff initially stated that Gonzalez pepper sprayed him with Chavez but later corrected this to state that it was Salazar, not Gonzalez. Other than this mention of Gonzalez, Plaintiff does not name the following Defendants or attribute any actions to them: Charles, Loza, Hunter, Gonzalez, Rodriguez, or Acebedo. Specifically, Plaintiff does not allege that these Defendants were present at any time during the alleged use of force or that they failed to intervene. The KVSP OOG received and accepted this grievance on August 30, 2019, where it bypassed the first level of review.  On March 26, 2020, the OOG granted the grievance in part in

11

1   that they conducted an appeal inquiry. (Leyva Decl. ¶ 18, Ex. C.)

2       21.     Dissatisfied, Plaintiff appealed KVSP-O-19-03384 to the OOA, where it was

3   assigned Appeal Log No. 2009750. Plaintiff still did not name the following Defendants or

4   attribute any misconduct to them in this appeal: Charles, Loza, Hunter, Rodriguez or Acebedo.

5   He did clarify that Salazar was the one who pepper sprayed him, not Gonzalez, thus not

6   attributing any actions to Gonzalez. Plaintiff also did not allege that these Defendants were

7   present at any time during the alleged use of force or that they failed to intervene. The OOA

8   received Appeal Log No. 2009750 on August 3, 2020, and denied it on September 10, 2021.

9   (Moseley Decl. ¶ 9, Ex. C.)

10      22.     Plaintiff also submitted three other grievances that are related to his claims.

11  (Leyva Decl. ¶¶ 17, 19-20, Exs. D-E; Moseley Decl. ¶¶ 8, 10-11, Exs. D-E.)

12      23.     In Grievance Log Number KVSP-O-19-04319, Plaintiff challenged the RVR he

13  received as a result of the August 16, 2019 incident, claiming the Senior Hearing Officer (SHO)

14  relied on false information, violated his due process rights, and denied questions for staff and

15  inmates. Plaintiff also alleged that he was not supposed to be released from Administrative

16  Segregation (Ad-Seg) on August 16, 2019, because he was being released the next day. Plaintiff

17  also alleged that he did not spit on Officer Kyt. KVSP OOG received and rejected the grievance

18  under Cal. Code of Regs., tit. 15, section 3084.6(b)(8) on November 13, 2019, stating that the

19  grievance involved multiple issues that did not derive from a single event, were not directly

20  related, or could not be reasonably addressed in a single response. Plaintiff was instructed to

21  resubmit the unrelated issues separately. Specifically, Plaintiff documented his dissatisfaction

22  with the findings in the Rules Violation Report (RVR) and allegations of staff misconduct.

23  Plaintiff was instructed to separate these two issues and amend (not re-write) his grievance to

24  reflect one issue. Plaintiff then re-submitted the grievance without crossing out any items to

25  narrow the issues. KVSP received and rejected the re-submitted grievance on November 18,

26  2019, because Plaintiff incorrectly filled out section D, despite his appeal never being previously

27  accepted for review. Plaintiff was instructed to re-write his grievance issue and comply with the

28  instructions in the screen out letter dated November 13, 2019. Plaintiff then resubmitted his

grievance to KVSP OOG, stating that he was "stand[ing] on my appeal as is." KVSP OOG received the re-submitted grievance and rejected it on January 8, 2020, because Plaintiff failed to follow the instructions as set forth in the previous screen out letter. Plaintiff was instructed to comply with the instructions and resubmit. Plaintiff was warned that continued refusals to follow directions could result in his grievance being cancelled under Cal. Code Regs., tit. 15, section 3084.6(c)(3).  (Leyva Decl. ¶ 19, Ex. D; Cal. Code of Regs., tit. 15, section 3084.6(b)(8); Cal. Code Regs., tit. 15, section 3084.6(c)(3).)

24.     Instead of complying and re-submitting KVSP-19-04319, Plaintiff sent the grievance to the OOA with the screen out stating he was "standing on the original appeal." The OOA assigned the grievance Appeal Log Number 1915942. The OOA received Appeal Log No. 1915942 on December 16, 2019, and rejected it on December 27, 2019, because Plaintiff bypassed the lower levels of review. The OOA also sent a copy of the appeal to the Office of Grievances at KVSP for processing as appropriate.  (Moseley Decl. ¶ 10, Ex. D; see also Leyva Decl. ¶ 19, Ex. D.)

25.     The KVSP OOG received the KVSP-19-04319 back from the OOA on February 11, 2020, and cancelled it on March 10, 2020, because Plaintiff failed to correct and re-submit it within the applicable time constraints under Cal. Code Regs., tit. 15, section 3084.6(c)(10), and because Plaintiff bypassed lower levels of review by submitting directly to the OOA.  (Leyva Decl. ¶19, Ex. D; Cal. Code Regs., tit. 15, section 3084.6(c)(10).)

26.     In Appeal Log Number KVSP-O-20-01325, Plaintiff alleged that KVSP was corrupt and requested to be transferred to a different institution. Plaintiff further alleged he was a victim of unnecessary use of force on March 5, 2019, and August 16, 2019. KVSP OOG received and rejected this grievance under Cal. Code. Regs., tit. 15, section 3084.6(b)(2) on April 16, 2020, stating that Plaintiff failed to demonstrate a material adverse effect upon his welfare. The OOG further noted that Plaintiff's used of force allegations were already addressed in grievance log numbers 19-00918 and 19-03384. Plaintiff re-submitted his grievance stating that his previous allegations we not investigated fully and that he had demonstrated a material adverse effect upon his welfare. KVSP OOG received and rejected the re-submitted grievance on April 27, 2020,

stating that Plaintiff still failed to demonstrate a material adverse effect upon his welfare because he did not document the material adverse effect as it related to his current housing assignment. The OOG further noted that Plaintiff's use of force allegations were already addressed in grievance log numbers 19-00918 and 19-03384.  (Leyva Decl. ¶ 20, Ex. E.)

27.    In Appeal Log No. 6021, Plaintiff alleged that KVSP improperly rejected grievances as a form of harassment. Plaintiff also discussed dissatisfaction with the timely processing of Appeal Log Nos. KVSP-19-03384 and KVSP-19-04606/PBSP-20-00572. Appeal Log No. 6021 was received by the OOA on June 29, 2020, and was granted on August 27, 2020. The KVSP OOG then sent a letter to Plaintiff addressing the issues raised regarding the status of his appeals in response to the OOA's granting of the grievance.  (Moseley Decl. ¶ 11 Ex. E; see also Leyva Decl. ¶ 27, Ex. J.)

28.    Plaintiff also submitted various unrelated appeals during the relevant time frame. (Leyva Decl. ¶¶ 21-29, Exs. F-L; Moseley Decl. ¶¶ 12-14, Exs. F-G.)

29.    Plaintiff did not submit any other appeals or grievances, related or unrelated to the allegations in his Complaint, during the relevant time frame beyond the ones provided.  (Leyva Decl. ¶ 30, Exs. A-B; Moseley Decl. ¶ 15. Exs. A-B.)

**4.    Defendants' Motion for Failure to Exhaust the Administrative Remedies**

Defendants Charles, Loza, Hunter, Gonzalez, Rodriguez, and Acebedo argue that Plaintiff failed to exhaust the administrative remedies with respect to the failure to intervene claim asserted against them.[3]

Here, it is undisputed that the administrative grievance process was available to Plaintiff as he used the process between August 16, 2019 and July 7, 2022, when he filed this action.  (UF 2, 17.)

As Defendants have carried their burden to show that there was an available administrative remedy and that Plaintiff did not exhaust that available remedy prior to commencement of the instant lawsuit, "the burden shifts to the prisoner to come forward with

---

[3] Defendants do not argue that Plaintiff failed to exhaust the administrative remedies with respect to the excessive force claim against Defendants Chavez, Salazar, Kyt, Lirio, and Furlong or the failure to protect claim against Valero.  (ECF No. 29.)

evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino II, 747 F.3d at 1172. However, "the ultimate burden of proof remains with the defendant." Id.

Viewing the undisputed evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff failed to properly exhaust administrative remedies for his failure to intervene claims against Defendants Gonzalez, Charles, Loza, Hunter, Rodriguez and Acebedo.  Defendants submit undisputed evidence that Plaintiff filed KVSP-O-19-03384, as well as three related grievances (KVSP-O-19-04319, KVSP-O-20-01325, and 6021).  (UF 22-27.)  Plaintiff also submitted various unrelated grievances during the relevant time frame.  (UF 17, 28.)  Other than the grievances provided, Plaintiff did not submit any other grievances during the relevant time frame.  (UF 29.)

      1.     Grievance Log Number KVSP-O-19-03384

In Grievance Log Number KVSP-O-19-03384, Plaintiff alleged he was attacked on August 16, 2019. (UF 20.) Specifically, while Plaintiff attempted to sit down in the dayroom, Officers Chavez and Salazar inappropriately sprayed him with pepper spray. (Id.) During the subsequent escort, Officer Kyt punched and kicked him and Officer Lirio slammed him to the ground. (Id.) While he was in the program office, Officer Furlong punched him in the head and threw him into the wall rendering him unconscious. (Id.) Plaintiff initially stated that Gonzalez pepper-sprayed him with Chavez but later corrected this to state that it was Salazar, not Gonzalez. (Id.) Other than this mention of Gonzalez, Plaintiff does not name the following Defendants or attribute any actions to them: Charles, Loza, Hunter, Gonzalez, Rodriguez, or Acebedo. (Id.) Specifically, Plaintiff does not allege that these Defendants were present at any time during the alleged use of force or that they failed to intervene. (Id.) The KVSP OOG received and accepted this grievance on August 30, 2019, where it bypassed the first level of review. (Id.)

On March 26, 2020, the OOG granted the grievance in part in that they conducted an appeal inquiry. (Id.)  Dissatisfied, Plaintiff appealed KVSP-O-19-03384 to the OOA, where it was assigned Appeal Log No. 2009750. (UF 21.) Plaintiff still did not name the following Defendants or attribute any misconduct to them in this appeal: Charles, Loza, Hunter, Rodriguez, or Acebedo,

other than to clarify that Salazar was the one who pepper sprayed him, not, Gonzalez, thus not attributing any actions to Gonzalez. (Id.) Plaintiff also did not allege that these Defendants were present at any time during the alleged use of force or that they failed to intervene. (Id.) The OOA received Appeal Log No. 2009750 on August 3, 2020, and denied it on September 10, 2021. (Id.)

While Plaintiff exhausted this appeal, he did not raise the failure to intervene allegations described in the complaint, name Defendants Gonzalez[4], Charles, Loza, Hunter, Rodriguez or Acebedo, or attribute any actions to them.  Thus, this grievance did not place the institution on notice of these Defendants alleged wrongdoing and cannot serve to exhaust the administrative remedies as to his failure to intervene claim against them.  Consequently, Plaintiff did not alert the prison to the nature of the wrong he now alleges in this action, Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009), he did not give CDCR a fair opportunity to adjudicate the claims in the instant suit, Woodford v. Ngo, 548 U.S. 81, 90 (2006), and as a result did not satisfy the basic purposes of the exhaustion requirement, Irwin v. Zamora, 161 F.Supp.2d 1125, 1135 (S.D. Cal. 2001).

Moreover, in addition to providing notice to the prison of the alleged wrongdoing, prison regulations also require an appeal "list all staff member(s) involved and shall describe their involvement in the issue."  Cal. Code Regs. tit. 15, § 3084.2(a)(3).  Inmates must all identify "the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue."  Id.  If the inmate does not have the required information, he is to provide "any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question."  Id.  As stated above, Plaintiff did not identify Defendants Gonzalez,[5] Charles, Loza, Hunter, Rodriguez or Acebedo by name.  (UF 20-21.)  Nor did Plaintiff provide any identifying information or allege that staff members watched the alleged excessive use of force incident, had an opportunity to intervene, but

---

[4] Plaintiff initially names Gonzales as one of the officers who pepper sprayed him with Chavez, but later clarifies that Gonzalez did not pepper spray him as it was Salazar who did so.  Plaintiff thereafter attributes no further actions to Gonzalez and does not mention him anywhere else.  (UF 21.)

[5] Again, Plaintiff only erroneously provided Gonzalez's name as one of the officers who pepper sprayed him but later clarified this to state Salazar was the one who pepper sprayed him, not Gonzalez.

16

failed to do so.  (UF 20-21); <u>see</u> <u>Coleman v. Cal. Dep't of Corr. & Rehab.</u>, No. 2:13-cv-1021

JAM KJN, 2015 WL 4478156, at *18 (E.D. Cal. July 22, 2015).  Nor did the prison ignore a

procedural flaw and proceed to the merits otherwise.  <u>See</u> <u>Reyes v. Smith</u>, 810 F.3d 654, 658 (9th

Cir. 2016) (the court held that a prisoner exhausts "such administrative remedies as are

available," 42 U.S.C. § 1997e(a), under the PLRA despite failing to comply with a procedural

rule if prison officials ignore the procedural problem and render a decision on the merits of the

grievance at each available step of the administrative process.)  <u>Reyes</u> in inapplicable in this

instance because Plaintiff's failure to intervene claim was raised in the appeal or reviewed at any

level and the excessive force claim was the only claim at issue.  (UF 20-21.)  Accordingly, this

grievance does not exhaust Plaintiff's failure to intervene claim against Defendants Gonzalez,

Charles, Loza, Hunter, Rodriguez and Acebedo.

> ## 2.   Grievance Log Number KVSP-O-19-04319

While not directly relevant to Plaintiff's claims, Grievance Log Number KVSP-O-19-

04319 is related. (UF 23-25.)  In Grievance Log Number KVSP-O-19-04319, Plaintiff challenged

the Rules Violation Report (RVR) he received as a result of the August 16, 2019 incident,

claiming the Senior Hearing Officer relied on false information, violated his due process rights,

and denied questions for staff and inmates. (UF 23.) Plaintiff also alleged that he was not

supposed to be released from Administrative Segregation (Ad-Seg) on August 16, 2019, because

he was being released the next day. (<u>Id.</u>) Plaintiff also alleged that he did not spit on Officer Kyt.

(<u>Id.</u>) KVSP OOG received and rejected the grievance under Cal. Code of Regs., tit. 15, section

3084.6(b)(8) on November 13, 2019, stating that the grievance involved multiple issues that did

not derive from a single event, were not directly related, or could not be reasonably addressed in a

single response. (<u>Id.</u>) Plaintiff was instructed to resubmit the unrelated issues separately. (<u>Id.</u>)

Specifically, Plaintiff documented his dissatisfaction with the findings in the RVR and allegations

of staff misconduct. (<u>Id.</u>) Plaintiff was instructed to separate these two issues and amend (not re-

write) his grievance to reflect one issue. (<u>Id.</u>)

Plaintiff then re-submitted the grievance without crossing out any items to narrow the

issues. (<u>Id.</u>) KVSP received and rejected the re-submitted grievance on November 18, 2019,

because Plaintiff incorrectly filled out section D, despite his appeal never being previously accepted for review. (<u>Id.</u>) Plaintiff was instructed to re-write his grievance issue and comply with the instructions in the screen-out letter dated November 13, 2019. (Id.) Plaintiff then resubmitted his grievance to KVSP OOG, stating that he was "stand[ing] on my appeal as is." (<u>Id.</u>) KVSP OOG received the re-submitted grievance and rejected it on January 8, 2020, because Plaintiff failed to follow the instructions as set forth in the previous screen out letter. (<u>Id.</u>) Plaintiff was instructed to comply with the instructions and resubmit. (<u>Id.</u>) Plaintiff was warned that continued refusals to follow directions could result in his grievance being cancelled under Cal. Code Regs., tit. 15, section 3084.6(c)(3). (<u>Id.</u>)

Instead of complying and re-submitting KVSP-19-04319, Plaintiff sent the grievance to the OOA with the screen out stating he was "standing on the original appeal." (UF 24.) The OOA assigned the grievance Appeal Log Number 1915942. (<u>Id.</u>) The OOA received Appeal Log No. 1915942 on December 16, 2019, and rejected it on December 27, 2019, because Plaintiff bypassed the lower levels of review. (<u>Id.</u>) The OOA also sent a copy of the appeal to the Office of Grievances at KVSP for processing as appropriate. (<u>Id.</u>)

The KVSP OOG received the KVSP-19-04319 back from the OOA on February 11, 2020, and cancelled it on March 10, 2020, because Plaintiff failed to correct and re-submit it within the applicable time constraints under Cal. Code Regs., tit. 15, section 3084.6(c)(10), and because Plaintiff bypassed lower levels of review by submitting directly to the OOA. (UF 25.)

As reflected above, this appeal challenged the RVR Plaintiff received as a result of the August 16, 2019 incident, among other unrelated issues.  (UF 23.)  The grievance did not raise any issues related to Defendants Gonzalez, Charles, Loza, Hunter, Rodriguez and Acebedo's alleged failure to intervene on August 16, 20219.  Thus, it did not serve to place KVSP on notice of this claim.  In addition, the grievance was properly cancelled and not exhausted.  (UF 23-25.); <u>see</u> <u>Woodford</u>, 548 U.S. at 93 (inmates must comply with the procedural requirements for filing grievances in order to properly exhaust the administrative remedies).

   3. <u>Grievance Log Number KVSP-O-20-01325</u>

While also not directly relevant to Plaintiff's claims, Grievance Log Number KVSP-O-20-

01325 is related. (UF 26.) In Appeal Log No. KVSP-O-20-01325, Plaintiff alleged that KVSP was corrupt and requested to be transferred to a different institution. (UF 26.) Plaintiff further alleged he was a victim of unnecessary use of force on March 5, 2019, and August 16, 2019. (Id.) KVSP OOG received and rejected this grievance under Cal. Code. Regs., tit. 15, section 3084.6(b)(2) on April 16, 2020, stating that Plaintiff failed to demonstrate a material adverse effect upon his welfare. (Id.) The OOG further noted that Plaintiff's use of force allegations were already addressed in Grievance Log Nos. 19-00918 and 19-03384. (Id.) Plaintiff re-submitted his grievance stating that his previous allegations we not investigated fully and that he had demonstrated a material adverse effect upon his welfare. (Id.) KVSP OOG received and rejected the re-submitted grievance on April 27, 2020, stating that Plaintiff still failed to demonstrate a material adverse effect upon his welfare because he did not document the material adverse effect as it related to his current housing assignment. (Id.) The OOG further noted that Plaintiff's use of force allegations were already addressed in Grievance Log Nos. 19-00918 and 19-03384. (Id.)

As stated above, this appeal did not specifically grieve the August 16, 2019 incident, but mentioned that unnecessary force was used against him on August 16, 2019, among other issues. (UF 26.)  However, Plaintiff did not provide further factual details regarding the alleged use of force on August 16, 2019.  (Id.)  In fact, Plaintiff was informed that the August 16, 2019 incident was addressed in Grievance Log No. KVSP-O-19-03884.  (Id.)  Plaintiff also did not exhaust this appeal and it did not place prison officials on notice of his failure to protect claims against Defendants Gonzalez, Charles, Loza, Hunter, Rodriguez and Acebedo, nor did it name or provide any identifying information by Cal. Code Regs. tit. 15, § 3084.2(a)(3).  (Id.; UF 10.) Accordingly, this appeal did not serve to exhaust Plaintiff's failure to intervene claims.

    4.    <u>Grievance Log Number 6021</u>

While also not directly relevant to Plaintiff's claims, Grievance Log Number 6021 is related. (UF 27.) In Grievance Log No. 6021, Plaintiff alleged that KVSP improperly rejected grievances as a form of harassment. (Id.) Plaintiff was also dissatisfied with the timely processing of Appeal Log Nos. KVSP-19-03384 and KVSP-19-04606/PBSP-20-00572. (Id.) Appeal Log No. 6021 was received by the OOA on June 29, 2020, and was granted on August 27, 2020. (Id.)

The KVSP OOG then sent a letter to Plaintiff addressing the issues raised regarding the status of his appeals in response to the OOA's granting of the grievance. (Id.)

Plaintiff again did not specifically grieve the August 16, 2019 incident, but instead expressed dissatisfaction with the timely processing of KVSP-O-19-03884, the relevant appeal, among other unrelated issues.  (UF 27.)  The OOA ultimately granted the appeal of this grievance the appeal of this grievance and sent a letter to Plaintiff regarding the status of various appeals, including KVSP-O-19-03884.  (Id.)  Although the OOA granted this appeal and it was exhausted, it is undisputed that it did not place KVSP on notice of Plaintiff's failure to failure to intervene claims against Defendants Gonzalez, Charles, Loza, Hunter, Rodriguez and Acebedo.

### 5.    Excuse From Exhaustion Requirement

The statutory text is mandatory and "a court may not excuse a failure to exhaust." Ross v. Blake, 136 S. Ct. 1850, 1856 (2016) (rejecting "special circumstances" exception). On the other hand, the PLRA "contains its own, textual exception to mandatory exhaustion." Id. at 1858. "Under § 1997e(a), the exhaustion hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." Id. "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.' " Id. at 1858-59 (citation omitted). This standard must be applied to "the real-world workings of prison grievance systems." Id. at 1859.

In Ross, the Supreme Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Id. First, an exhaustion procedure is unavailable – "despite what regulations or guidance materials may promise" – if it operates as a "dead end" because officials never provide relief to aggrieved inmates. Id. Second, the exhaustion procedure may be so confusing that no reasonable prisoner "can make sense of what it demands." Id. Third, exhaustion procedures are unavailable when prison officials thwart its use by machination, misrepresentation or intimidation. Id. at 1860.

Here, although Plaintiff did not file an opposition to the instant motion for summary judgment, in the operative complaint Plaintiff states that grievances were "rejected, cancelled, or

disappeared.  Grievance procedure is illusory and 21afkaesque." (ECF No. at 5.)  However, the undisputed evidence submitted by Defendants reflects that Plaintiff was capable of submitted and exhausting a grievance regarding his failure to protect claim – KVSP-O-19-03374, he just failed to adequately place the institution on notice of his failure to protect claims against Defendants Gonzalez, Charles, Loza, Hunter, Rodriguez, and Acebedo.  (UF 19-21.)  Indeed, Plaintiff successfully filed and exhausted KVSP-O-19-03884 during the relevant time frame which demonstrates that he knows how to utilize the appeals process, was fully aware of the requirements, and the process remained available.  (Id.)  It is also undisputed that Plaintiff submitted other related grievances, one of which was granted, further showing he was able to submit and exhaust inmate grievances.  (UF 22-27.)  But, those grievances did not notify the institution of Plaintiff's failure to intervene claims against Defendants Gonzalez, Charles, Loza, Hunter, Rodriguez, and Acebedo.  (Id.)  Consequently, Plaintiff has not and cannot show that he was prevented from submitting or exhausting his appeals.  Plaintiff simply failed to assert all of the factual allegations raised in the instant action without excuse.  Accordingly, Plaintiff has not met the requirements to be excused from exhaustion the administrative remedies.

**IV.**

**RECOMMENDATIONS**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.      Defendants' exhaustion motion for a summary judgment be granted; and

2.      Plaintiff's failure to intervene claims against Defendants Gonzalez, Charles, Loza, Hunter, Rodriguez, and Acebedo be dismissed from the action, without prejudice, for failure to exhaust the administrative remedies.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772

21

F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 5, 2023**

UNITED STATES MAGISTRATE JUDGE